IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBIN J. YORK, et al.,

                 Plaintiffs,

v.                                 CIVIL ACTION NO.   2:12-cv-06582

PROPERTY AND CASUALTY
INSURANCE COMPANY OF HARTFORD,

                 Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court is the plaintiffs' Motion to Remand [Docket 12], Defendant Property and Casualty Company of Hartford's Motion for Relief from Judgment Pursuant to Rule 60(b) [Docket 7], and Defendant Property and Casualty Company of Hartford's Motion to Dismiss Plaintiff's Second Amended Complaint [Docket 5].

For the reasons stated below, the plaintiffs' Motion to Remand [Docket 12] is **DENIED**, Defendant Property and Casualty Company of Hartford's Motion for Relief from Judgment Pursuant to Rule 60(b) [Docket 7] is **GRANTED**, and Defendant Property and Casualty Company of Hartford's Motion to Dismiss Plaintiff's Second Amended Complaint [Docket 5] is **DENIED without prejudice**.

I.      **Background**

A.      **Mingo County Circuit Court Suit**

This case arises from a car accident that occurred on October 13, 2011 in Mingo County, West Virginia. (Second Am. Compl. [Docket 1-1], ¶ 9). Adam York was a passenger in a 2010

Toyota Sequoia owned and operated by defendant Joshua Miller and co-owned by defendant John Miller (*Id.*). Adam York was killed in the accident. The Estate of Adam York filed a lawsuit against Joshua Miller in the Circuit Court of Mingo County on November 11, 2011. (Compl. [Docket 1-1]). The first complaint brought two claims: wrongful death and violation of statute under West Virginia Code § 55-7-9. The Estate amended its complaint ("First Amended Complaint") on March 9, 2012, to add new parties and claims. (*See* Def. Hartford's Mem. in Opp'n to Pls.' Mot. to Remand [Docket 16], at 4). It added Joshua Miller's parents, John and Myra Miller, to the wrongful death claim. It added Property and Casualty Insurance Company of Hartford ("Hartford"), the plaintiffs' insurer, to both claims and then added a third claim against Hartford for underinsured motorist coverage. (*Id.*). The underinsured motorist coverage claim alleged that the settlement offered by defendant Joshua Miller's liability insurer "did not fully compensate" the plaintiffs for the injuries and damages from the accident. (First Am. Compl. [Docket 1-1], ¶ 31). The plaintiffs allege they informed Hartford of the settlement on January 23, 2012, requesting that Hartford "waive its subrogation rights" and "tender the limits of the underinsured motorist policy." (*Id.* ¶ 32). The plaintiffs allege Hartford did not respond, "thus forcing Plaintiff to file the instant underinsured motorist claim." (*Id.* ¶ 33).

On August 1, 2012, Hartford received a "Notice of Hearing," which would address the Estate's "Petition and Application of Robin J. York, Administratix of the Estate of Adam R. York, for Permission to Settle Claim and Distribute Proceeds." (Def. Hartford's Mem. in Opp'n to Pls.' Mot. to Remand [Docket 16], at 5). At the hearing on August 6, 2012, the Circuit Court approved the settlement and issued an order releasing Joshua Miller, John Miller, and Myra Miller (the "Miller defendants") "from any and all further liability in connection with or arising out of the injuries and death of Adam R. York, except to the extent that there is underinsured motorist

coverage available." (Order Approving Settlement and Distribution [Docket 16-1], ¶ 12). Hartford was not at the hearing and alleges it did not receive a copy of the order.

Because Hartford had not responded to the complaint, default was entered on June 12, 2012. (J. Order [Docket 14-1], ¶¶ 12-14). On August 6, 2012, the circuit court entered default judgment against Hartford in the amount of $4,127,615.18. (*Id.* at 5-6). On August 20, 2012, the Estate filed a Second Amended Complaint, which continues to list the Miller defendants in the caption, but seeks recovery only from Hartford for violations of West Virginia law regarding the processing of insurance claims. The Second Amended Complaint was sent to the Secretary of State on September 14, 2012, and received by Hartford's agent on September 24, 2012.

### B. Removal to District Court and Dismissals

Hartford removed this case on October 12, 2012 pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b). In its notice of removal, Hartford alleged that the Miller defendants are fraudulently joined because the Second Amended Complaint "states no claim against" the Miller defendants. (Notice of Removal [Docket 1], ¶ 10).

Third-party defendant Paul Howard, Jr. was voluntarily dismissed on February 6, 2013. (*See* Agreed Dismissal Order [Docket 32]). Subsequently, on July 19, 2013, the claims against the Miller defendants were dismissed. (*See* Order of Dismissal [Docket 44]). Mr. Howard and the Miller defendants are no longer parties to this case. The Estate, Robin J. York, and Hartford are the only parties that remain.

### II. Motion to Remand

The plaintiffs move to remand this case to the circuit court because they argue that Hartford's removal is untimely under 28 U.S.C. § 1446(b).

### a.  Legal Standard

A case may be removed to federal court only if it is within the federal court's original jurisdiction. 28 U.S.C. § 1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to a federal court by the defendant."). "A case falls within [a] federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same state." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). The party seeking removal bears the burden of establishing federal jurisdiction. *See Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Because removal implicates significant federalism concerns, it is strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Mulcahey*, 29 F.3d at 151. If federal jurisdiction is doubtful, the case must be remanded. *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 334 (4th Cir. 2008).

One exception to the complete diversity requirement is the concept of nominal parties. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 466 U.S. 458, 461 (1980). "Nominal parties are generally those without a real interest in the litigation." *Spencer v. Harris*, 394 F. Supp. 2d 840, 843 (S.D. W. Va. 2005) (citing *Bumberger v. Ins. Co. of N.A.*, 952 F.2d 764, 767 (3rd Cir. 1991). The United States Supreme Court has referred to nominal parties as those "having no interest" and not "concerned in the judgment." *Title Guar. & Sur. Co. of Scranton, PA., v. Idaho*, 240 U.S. 136, 140-41 (1916).

### b.  Analysis

#### i.  Diversity of Citizenship

There are no disagreements about the citizenship of the parties in this case. The plaintiffs, Robin J. York and the Estate of Adam R. York, are citizens of Kentucky. (Second Am. Compl. [Docket 1-1], ¶ 1). The Miller defendants are citizens of Kentucky. (*Id.* ¶¶ 2-4). Hartford is an Indiana corporation with its principal place of business in Connecticut. (Notice of Removal [Docket 1], ¶ 8). The third-party defendant Paul Howard, Jr. is a citizen of West Virginia. (Second Am. Compl. [Docket 1-1], ¶ 6). Most of these parties are no longer parties to this action. The only parties that remain are the Estate, Robin York, and Hartford. Nonetheless, on a motion to remand, I determine whether subject matter jurisdiction existed at the time of removal.

On the face of the Second Amended Complaint, there is not diversity of citizenship. However, Hartford claimed in its Notice of Removal that the Miller defendants are fraudulently joined in the Second Amended Complaint, as the plaintiffs have no actual claims against them. The plaintiffs do not directly address this point, though their timeliness argument (as discussed below) relies on the idea that the citizenship of the Miller defendants ceased to matter when the circuit court approved the release of any and all claims relating to the injury and death of Adam York. I agree that the Miller defendants are no longer real parties in interest in the litigation. Even if the plaintiffs receive all they seek in their Second Amended Complaint, that judgment would not affect the Miller defendants. Accordingly, I **FIND** the Miller defendants are nominal parties that do not destroy diversity jurisdiction. *See Leadman v. Fid. & Cas. Co. of N.Y.*, 92 F.Supp. 782, 784 (S.D. W. Va. 1950) ("In determining questions of removability, only indispensable and necessary parties are considered. Nominal or formal parties are disregarded.").

### ii.  Timeliness of Removal

The only grounds the plaintiffs raise in their motion to remand is that Hartford's removal is untimely under 28 U.S.C. § 1446(b). The statute, at the time of removal in 2012, stated in relevant part

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed . . . more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (2012). This subsection has been interpreted to permit the removal of an action when a plaintiff creates complete diversity by voluntarily dismissing the only nondiverse party to a state action. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1998). The key issue in dispute is which document made it first ascertainable by Hartford that the case had become removable.

The plaintiffs allege that when their settlement with the Miller defendants was approved by the state court on August 6, 2012, it effectively "dismissed the only non-diverse parties to this action," and therefore August 6, 2012 was the latest possible date that the case became removable. Hartford's removal on October 12, 2012 would then be untimely because it was 77 days after the settlement was approved.

Hartford disagrees with the plaintiffs' assessment of both the relevant document and the date of receipt. First, Hartford argues it is the Second Amended Complaint, not the August 6, 2012 hearing (or the written order approving the settlement), that is the first document that makes removal ascertainable. Hartford notes that the August 6, 2012 order "did not categorically dismiss the non-diverse Miller defendants," and "[i]n fact, the August 6, 2012 Order expressly stated that

6

the non-diverse Miller defendants <u>could remain</u> parties in the case," a position which Hartford believes is supported by the fact that the Miller defendants made additional filings in the case after August 6, 2012. (Def. Hartford's Mem. in Opp'n to Pls.' Mot. to Remand [Docket 16], at 2) (emphasis in original). Specifically, the August 6, 2012 order stated that the Miller defendants were "DISMISSED with prejudice, except to the extent that they may be named as defendants for underinsured motorist coverage." (Order Approving Settlement and Distribution [Docket 16-1], at 4-5). On August 20, 2012, the plaintiffs filed a Second Amended Complaint that names the Miller defendants, but does not appear to actually state any claim against them. (*See* Second Am. Compl. [Docket 1-1]). According to Hartford, it did not know that the Miller defendants were truly dismissed until it received the Second Amended Complaint, which showed that the plaintiffs are not seeking any relief from the Miller defendants for underinsured motorist coverage.

Second, Hartford argues that the standard for 28 U.S.C. § 1446(b) is actual receipt of a document indicating the case was removable. Therefore the 30 day clock did not start until Hartford itself actually received the Second Amended Complaint on September 24, 2012, and Hartford's removal on October 12, 2012 was timely.   Hartford also argues that even if the August 6, 2012 order did show the Miller defendants were no longer in the case, removal was still timely because Hartford did not receive a copy of the order until September 28, 2012, when its counsel's paralegal photocopied the state court file. (Def. Hartford's Mem. in Opp'n to Pls.' Mot. to Remand [Docket 16], at 6). The order itself directed it be served to specific recipients, which did not include Hartford or any Hartford representative or agent. (*Id.* at 13; Order Approving Settlement and Distribution [Docket 16-1], at 5).

The first issue to determine is what "amended pleading, motion, order or other paper" began the 30 day removal clock. The plaintiffs believe that the August 1, 2012 "Notice of Hearing"

7

and "Petition and Application of Robin J. York, Administratrix of the Estate of Adam York to Settle Claim and Distribute Proceeds" put Hartford on notice that the claims would be resolved on August 6, such that when the Circuit Court approved the settlement, the case was instantly removable. The plaintiffs rely on several cases to support this argument. *See King v. Kayak Mfg. Corp.*, 688 F. Supp. 227, 230 (N.D. W. Va. 1988) ("a written order is not necessarily a paramount consideration in determining whether a case is ripe for removal"); *Harper v. Carmichael Equipment, Inc.*, No. 2:09-cv-1122, 2010 WL 2595070, at *5 (S.D. W. Va. June 24, 2010) (finding case ripe for removal when defendant received "an executed copy of the settlement agreement [and] an Agreed Partial Dismissal Order, signed by counsel for plaintiffs and [the nondiverse defendant]"); *Allison v. Meadows*, No. 2:05-CV-00092, 2005 WL 2016815, at *3 (S.D. W. Va. Aug. 22, 2005) (finding case ripe for removal when defendant received "signed and executed settlement agreement" releasing nondiverse defendant from all claims).

However, the cited cases are factually distinct from this case, or in fact contradict the plaintiffs' position. In *King*, the removing party was present when the state trial judge "advised the parties . . . that the resident defendant, Jack Marks, was no longer a party to the action." 688 F. Supp. at 228. In *McMahon v. Advance Stores Co., Inc.*, both parties were present when the judge granted leave to file an amended complaint, so the 30 days began when the defendant received a copy of the amended complaint several days later. No. 5:07CV123, 2008 WL 183715, at *7 (N.D. W. Va. Jan. 18, 2008). Here, Hartford was not at the hearing, so it could not have been placed on notice that the claims against the Miller defendants had been voluntarily dismissed with prejudice.

This case is also unlike *Harper* and *Allison*. In those cases, the parties could settle and voluntarily dismiss the nondiverse defendants without court approval. *See Harper*, 2010 WL 2595070, at *5; *Allison*, 2005 WL 2016815, at *3. Here, however, settlement with the Millers

8

required court approval under W.Va. Code § 55-7-7. *See Estate of Postlewait v. Ohio Valley Med. Cntr.*, 214 W. Va. 668, 673-74 (2003) (noting that even if the beneficiaries to a wrongful death settlement agreement are all adults, "the trial court must still ascertain that each potential beneficiary has been included in the agreement and make inquiry regarding the presence [of] any factor that could potentially serve to invalidate the agreement."). Thus, the "Notice of Hearing" and "Petition" did not "establish with a reasonable degree of certainty that dismissal of the nondiverse defendant is an inevitability" because the Circuit Court was authorized to reject it. *Allison*, 2005 WL 2016815, at *3.

Although the August 6, 2012 order demonstrated that there was complete diversity, I have previously stated that "the thirty day time-period begins when the defendant ascertains removability, not when it is created." *Id.*; *see also Eskridge v. Pacific Cycle, Inc.*, No. 2:11-cv-00615, 2011 WL 5976284, at *2 (S.D. W. Va. Nov. 29, 2011) ("[W]here service of process is effected on a statutory agent, the time for removal does not begin to run until the defendant has actually received a copy of the process.") (quoting *Lilly v. CSX Transp., Inc.*, 186 F. Supp. 2d 672, 675 (S.D. W. Va. 2002)). Here, Hartford alleges it did not see the order until September 28, 2012. This is four days after Hartford received a copy of the Second Amended Complaint. Because 28 U.S.C. § 1446(b) looks to receipt date of the document "from which it may first be ascertained that the case is on which is or has become removable," and Hartford received the Second Amended Complaint on September 24, 2012, I **FIND** that removal on October 12, 2012 was timely. Accordingly, the plaintiffs' Motion to Remand [Docket 12] is **DENIED**.

### III.    Motion to Set Aside Default Judgment

The circuit court for Mingo County entered default judgment against Hartford on August 6, 2012 in the amount of $4,127,615.18. Hartford now moves to set aside that judgment because it

9

resulted from "excusable neglect." According to Hartford, an intake employee misidentified the First Amended Complaint and placed it into a workers' compensation file under the name "Joshua Miller." (*See* Def. Hartford's Mot. for Relief from J. Pursuant to Rule 60(b) [Docket 7], at 7). As a result, the claim adjuster working with the plaintiffs and plaintiffs' counsel was unaware of the pending lawsuit against Hartford. (*Id.*). Further, plaintiffs' counsel regularly communicated with the Hartford claims adjuster without mentioning the pending lawsuit against Hartford. (*See* Def. Hartford's Mot. for Relief from J. Pursuant to Rule 60(b) [Docket 7], at 7). According to Hartford,

> [t]hereafter, and without affirmatively mentioning the existence of the default entry, counsel for the Estate sent Hartford a notice that it was seeking Court approval to settle the Estate's wrongful death claim against the Millers as the alleged tortfeasors. Counsel for the Estate stuck within that 16-page settlement hearing notice packet an unrelated one-page notice, on page 12 of 16 of the packet, but never mentioned that he was doing so, or that any hearing was forthcoming. The text of the one-page notice did not reference Hartford by name, nor did the text contain the words "default judgment." Hartford's claims adjuster never noticed that the single page had been inserted in the back of the larger settlement hearing notice document, and plaintiff's counsel made no mention of it.

(*See* Def. Hartford's Mot. for Relief from J. Pursuant to Rule 60(b) [Docket 7], at 7-8). The plaintiffs do not dispute this.

Hartford additionally argues that the plaintiffs voluntarily vacated the default judgment by filing a Second Amended Complaint. I do not address this argument because I **FIND** that the default judgment should be vacated pursuant to Rule 60(b)(1).

### a. Legal Standard

Rule 60(b)(1) provides that, among other things, a court "may relieve a party . . . from a final judgment" due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). As I have previously held,

> in assessing a motion to set aside a default judgment, a district court should consider: (1) whether the moving party has a meritorious defense to the action; (2)

10

whether the moving party acted with reasonable promptness; (3) who bore responsibility for the default; (4) any unfair prejudice to the non-moving party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic.

*U.S. Foodservice, Inc. v. Donahue*, 764 F. Supp. 2d 816, 820 (S.D. W. Va. 2011) (citing *Augusta Fiberglass, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988); *see also Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987). Furthermore, the movant "must show that he had an acceptable excuse for lapsing into default." *Central Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 252 (4th Cir. 1974).

After a case is removed to federal court, the district court may set aside an earlier judgment entered by the state court. *See Resolution Trust Corp. v. Allen*, 16 F.3d 568, 573 (4th Cir. 1994) (holding that parties could file post-judgment motions pursuant to the Federal Rules of Civil Procedure in case removed to federal court after the state court entered final judgment); *Cf. Holmes v. AC & S, Inc.*, 388 F. Supp. 2d 663, 668 (E.D. Va. 2004) ("Removal of a case from state to federal court neither nullifies what the state court did, nor precludes the federal court from taking further steps that it could have taken if the case had originated there.").

### b.  Analysis

Hartford argues that it has a meritorious defense to the claims underlying the First Amended Complaint because the judgment exceeds its insurance policy limitation by 41 times. First, under the laws of Kentucky, [1] where the insurance policy was issued, carriers of underinsured motorist coverage can only recover to the extent of the policy limits. *See* Ky. Rev. Stat. Ann. § 304.39-320. Second, the plaintiffs' First Amended Complaint sought only $100,000

---

1 West Virginia's choice of law rules dictate that I apply Kentucky law here because the insurance policy was issued in Kentucky. *See Lee v. Saliga*, 373 S.E.2d 345, 348 (W. Va. 1988) ("As with all types of insurance, uninsured motorist insurance is a contract between the insurer and the insured. Generally, that contractual relationship is controlled by the law of the state in which the policy was issued . . . .") (citations omitted).

from Hartford, the equivalent of the policy limit. West Virginia caps damages on default judgments to the amount sought in the pleadings. *See* W. Va. R. Civ. P. 54(c) ("judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment"). Even so, the circuit court entered a judgment of more than $4 million, despite West Virginia's damages cap and the policy limit. Consequently, I **FIND** that Hartford has made a sufficient showing that it has a meritorious defense to the judgment entered under the First Amended Complaint.

I **FIND** that Hartford's motion was timely. Motions under Rule 60(b) must be made within a reasonable time, and motions under Rule 60(b)(1) must be made within one year of entry of judgment. Fed. R. Civ. P. 60(b). Hartford moved less than three months after entry of judgment and less than one month after Hartford became aware of the default judgment.

I **FIND** that the plaintiffs would not be unfairly prejudiced by having the judgment set aside. The plaintiffs argue that their prejudice would be in re-gathering witnesses and records to establish their claim. (*See* Pls.' Mem. in Opp'n to Mot. for Relief from J. Pursuant to Rule 60(b) [Docket 15], at 11). However, as the Fourth Circuit has stated, "no cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every plaintiff assumes." *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 419 (4th Cir. 2010) (overturning district court's denial of relief under Rule 55 to set aside entry of default). Further, because the plaintiffs apparently made a conscious decision to not mention the pending lawsuit against Hartford, despite the fact that they were in regular contact with Hartford's claim adjuster, any prejudice to be incurred by the plaintiffs would not be unfair.

As to the other factors—who bore responsibility for the default, whether there is a history of dilatory action, and whether there are less drastic sanctions available, I **FIND** that they do not

12

counsel against vacating the default judgment. Hartford is responsible for its failure to respond to the First Amended Complaint, but Hartford's culpability is mitigated by the fact that the plaintiffs' counsel neglected to mention the lawsuit to Hartford's claim adjuster. Further, there are no allegations that Hartford has a history of dilatory action. Finally, in consideration of less drastic sanctions, I can order Hartford to pay the plaintiffs' costs for obtaining the default judgment.

The plaintiffs argue that Hartford has not demonstrated excusable neglect, citing *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894 (4th Cir. 1987), a case in which an "unexplained disappearance of the summons" did not rise to the level of excusable neglect. *Id.* at 897. However, in this case, there was no unexplained disappearance. Hartford explained that an intake employee misidentified the First Amended Complaint and placed it into a workers' compensation file under the name "Joshua Miller." (*See* Def. Hartford's Mot. for Relief from J. Pursuant to Rule 60(b) [Docket 7], at 7). As a result, the claim adjuster working with the plaintiffs and plaintiffs' counsel at the time was never informed of the pending lawsuit against Hartford. (*Id.*).

In light of Hartford's strong showing of a meritorious defense, the egregiousness of the circuit court's departure from West Virginia's cap on default judgments, the relatively light prejudice the plaintiffs will suffer, and Hartford's low culpability, I **FIND** that Hartford's conduct constituted excusable neglect under Rule 60(b)(1). In any event, "where a movant possess a meritorious defense, doubt, if any, should be resolved in favor of granting the [Rule 60(b)(1)] motion to set aside the judgment in order to permit the case to be resolved on its merits." *Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir. 1973). Because I find that Rule 60(b)(1) is satisfied, I decline to address whether the Second Amended Complaint vacated the default judgment.

For the foregoing reasons, Hartford's Motion for Relief from Judgment [Docket 7] is **GRANTED** and the default judgment against Hartford entered in the Circuit Court is **VACATED**. Hartford is **ORDERED** to pay the plaintiffs' costs in obtaining the default judgment. I **DIRECT** the plaintiffs to file within ten days, in this court, an accounting for time spent and the rate charged for fees incurred in obtaining the default judgment against Hartford. Because the default judgment was based on the plaintiffs' claim for underinsured motorist coverage, a claim not alleged in the Second Amended Complaint, the plaintiffs are **GRANTED** thirty days to file an amended complaint.

### IV.    Motion to Dismiss

Hartford moves to dismiss under Rule 12(b) for three reasons: (1) lack of personal jurisdiction, (2) insufficient service of process, and (3) failure to state a claim. For the reasons stated below, Hartford's motion to dismiss [Docket 5] is **DENIED** with respect to lack of personal jurisdiction, **DENIED** with respect to insufficient service of process, and **DENIED without prejudice** with respect to failure to state a claim.

#### a.   Lack of Personal Jurisdiction

Hartford argues that this court lacks personal jurisdiction over it because its contacts with West Virginia are not related to this lawsuit. Although Hartford is licensed to do business in West Virginia, sells policies here, and maintains more than 70 active insurance agents, none of these contacts are related to the York automobile accident.

##### i.   Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort*

*Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). When the court addresses the jurisdictional question "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* In such a case, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *New Wellington*, 416 F.3d at 294 (citing *Combs*, 886 F.2d at 676).

For a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). First, a state long-arm jurisdiction statute must authorize jurisdiction over the non-resident defendant. Second, the court's exercise of personal jurisdiction over the non-resident defendant must "comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). "Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Id.* at 627-28 (citing *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir.1987)). Consequently, the statutory inquiry merges with the constitutional inquiry, and the two inquires essentially become one. *See id.* Accordingly, the court's inquiry centers on whether exercising personal jurisdiction over the defendants is consistent with the Due Process Clause.

"A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient 'minimum contacts' with the forum

15

such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *In re Celotex*, 124 F.3d 619 at 628 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The appropriate standard for assessing "minimum contacts" depends on whether the defendant's contacts with the forum also provide the basis for the suit. *See Carefirst of Md. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 397 (4th Cir. 2003). When the contacts in question provide the basis for the suit, courts may exercise what is known as "specific jurisdiction." *Id.* If the defendant's contacts with the forum do not provide the basis for the suit, such as the case here, a court may only exercise "general jurisdiction." *Id.* General jurisdiction requires a higher threshold of contacts with the forum, and is appropriate only where the defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

### ii.  Analysis

The parties do not dispute that Hartford's contacts with West Virginia are unrelated to this lawsuit. Accordingly, my analysis is limited to determining whether I may exercise general jurisdiction over Hartford. Although Hartford is an out-of-state corporation, it has numerous contacts with West Virginia. The plaintiffs describe the following contacts Hartford has with West Virginia:

> Hartford is licensed to do business in this State and, upon information and belief, systematically and continuously does insurance business in this State. This includes the solicitation of business in this State, the issuing of policies of insurance in this State and the adjustment of claims in this State. Hartford maintains both statutory and private service of process agents in this State – the West Virginia Secretary of State and Corporation Service Company located in Charleston. According to information from the West Virginia Insurance Commissioner's office, Hartford also has over 70 active agents in the State of West Virginia.

(Pls.' Mem. in Opp'n to Mot. to Dismiss the Second Am. Compl. [Docket 14], at 7). The plaintiffs further add that Hartford "continues to maintain its licensure in this State, continues to insure risks

in this State, continues to sell policies in this State, and continues to adjust claims in this State," making personal jurisdiction appropriate under the due process clause. (*Id*.). Hartford has not denied these contacts.

I **FIND** that these are sufficient minimum contacts for the exercise of general personal jurisdiction over Hartford. Hartford's contacts are substantially more extensive than what has been deemed insufficient in prior cases. *See Kandas v. Stillwell*, No. 2:12-cv-0204, 2012 WL 3670265, at *4 (S.D. W. Va. Aug. 24, 2012) (finding no general jurisdiction when defendant "was not licensed to practice optometry in West Virginia" and there were no allegations that the defendant ever actually practiced optometry in West Virginia); *Ratliff v. Cooper Labs., Inc*., 444 F.2d 745, 746 (4th Cir. 1971) (no general jurisdiction when activities in forum state included only "solicitation by mail" and "mailing of promotional literature to approximately 650 doctors on its mailing lists"). Hartford has satisfactory contacts to be subject to general jurisdiction in West Virginia. *See Harber v. Haupt*, No. 2:10-CV-01273, 2011 WL 552240, at *3 (S.D. W. Va. Feb. 9, 2011) (finding general jurisdiction over business that was registered to do business in West Virginia, had a permanent office in West Virginia, and employed two doctors full-time to operate at that office).

Hartford argues only that its contacts with the state are not related to this lawsuit and that the West Virginia long-arm statute does not permit the exercise of general personal jurisdiction. *See Lane v. Boston Scientific Corp.*, 481 S.E.2d 753 (W. Va. 1996) (affirming trial court's finding that plaintiff failed to establish personal jurisdiction under West Virginia long-arm statute where activities relevant to the cause of action took place out of state, and the defendant's only contacts in West Virginia were unrelated to the cause of action asserted). A footnote in *Lane* states that "plaintiff fails to explain how the causes of action alleged in this case arose from or grew out of

17

this transaction of business, as required by W. Va. Code, 56-3-33(a)." However, this is not the court's holding, as indicated by the court's syllabus points. *See id.* at 754.

Because I find that Hartford maintains sufficient minimum contacts with West Virginia such that the exercise of general personal jurisdiction is proper, Hartford's motion to dismiss for lack of personal jurisdiction is **DENIED**.

### b.   Insufficient Service of Process

Hartford also seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5), regarding insufficient service of process. Hartford alleges that the service of process was insufficient because the West Virginia Secretary of State sent it to be wrong address. Instead of mailing it to Hartford's nonresident address in Connecticut, the Secretary of State mailed it to Hartford's registered agent in Charleston, West Virginia. (Service Information [Docket 5-3]). For support, Hartford cites to *Beane v. Dailey*, 701 S.E.2d 848, 852 (W. Va. 2010), arguing that because the long-arm statute is a means of obtaining jurisdiction, its procedural requirements "must be strictly complied with." If service is not completed precisely as laid out by the statute, "[s]uch want of service renders the decrees based thereon absolutely void." *Id*.

At first glance, Hartford appears to be correct. W. Va. Code § 56-3-33(c) does explicitly state that the Secretary of State is to send notice and a copy of service to the defendant "at his or her nonresident address," which clearly did not occur in this instance. However, that section also provides that "[t]he provision for service of process herein is cumulative and nothing herein contained shall be construed as a bar to the plaintiff in any action or proceeding from having process in such action served in any other mode or manner provided by the law of this State." W. Va. Code § 56-3-33(f).

The Secretary of State did, in fact, comply with a different statutory provision for service of process on a nonresident corporation: W. Va. Code § 31D-15-1510. *See Ballard v. PNC Financial Services Group, Inc.*, 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009) ("Two sections of the West Virginia Code address service of process on a nonresident corporation: § 56-3-33 and § 31D-15-1510."). Section 31D-15-1510 provides that

> the Secretary of State is hereby constituted the attorney-in-fact for and on behalf of each foreign corporation authorized to do or transact business in this state pursuant to the provisions of this chapter. The Secretary of State has the authority to accept service of notice and process on behalf of each corporation and is an agent of the corporation upon whom service of notice and process may be made in this state for and upon each corporation. . . . Immediately after being served with or accepting any process or notice, the Secretary of State shall: . . . (2) transmit one copy of the process or notice by registered or certified mail, return receipt requested, by a means which may include electronic issuance and acceptance of electronic return receipts, to: (A) *The foreign corporation's registered agent*; or (B) if there is no registered agent, to the individual whose name and address was last given to the Secretary of State's office as the person to whom notice and process are to be sent and if no person has been named, to the principal office of the foreign corporation as that address was last given to the Secretary of State's office.

W. Va. Code § 31D-15-1510(d) (emphasis added).

Here, Hartford acknowledges that the Secretary of State sent the process to its registered agent in West Virginia. (*See* Service Information [Docket 5-3]). This satisfies § 31D-15-1510(d). *See Ballard*, 620 F. Supp. 2d at 738-39 (finding that § 31D-15-1510(d) governs when determining what address process should be sent to for a nonresident defendant). Therefore, Hartford's motion to dismiss for insufficient process or insufficient service of process is **DENIED**.

### c.   Failure to State a Claim

Because I set aside the default judgment against Hartford and allow the plaintiffs to file an amended complaint, Hartford's motion to dismiss for failure to state a claim is **DENIED without prejudice**.

19

## V.      Conclusion

For the reasons stated above, the plaintiffs' Motion to Remand [Docket 12] is **DENIED**, Defendant Property and Casualty Company of Hartford's Motion for Relief from Judgment Pursuant to Rule 60(b) [Docket 7] is **GRANTED**, and Defendant Property and Casualty Company of Hartford's Motion to Dismiss Plaintiff's Second Amended Complaint [Docket 5] is **DENIED without prejudice**. The plaintiffs are **GRANTED** thirty days to file an amended complaint. Hartford is **ORDERED** to pay the plaintiffs costs in obtaining a default judgment. I **DIRECT** the plaintiffs to file within ten days, in this court, an accounting for time spent and the rate charged for fees incurred in obtaining the default judgment against Hartford.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 3, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE