IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBIN J. YORK, et al.,

        Plaintiffs,

v.                                 CIVIL ACTION NO.   2:12-cv-06582

PROPERTY AND CASUALTY
INSURANCE COMPANY OF HARTFORD,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Now before the court are Plaintiff's Motion for Partial Summary Judgment on the Issue of Substantially Prevailing [Docket 81], Defendant Property and Casualty Insurance Company of Hartford's Motion for Summary Judgment [Docket 83], Plaintiff's Motions in Limine [Dockets 96-103], Plaintiff's Motion to Strike Proffered Expert Peter Kensicki [Docket 104], Defendant Property and Casualty Insurance Company of Hartford's Motion to Exclude Testimony of Plaintiff's Putative Expert Charles Miller [Docket 106], and Defendant Property and Casualty Insurance Company of Hartford's Omnibus Motion in Limine [Docket 108]. These motions are ripe for review. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment on the Issue of Substantially Prevailing [Docket 81] is **DENIED**, Defendant Property and Casualty Insurance Company of Hartford's Motion for Summary Judgment [Docket 83] is **GRANTED**, and the balance of the pending motions in this case are **DENIED as moot**.

**I.     Background**

This action arises out of an October 13, 2011 car accident in Mingo County, West Virginia. The plaintiff's decedent, Adam J. York, was a passenger in a car being driven by Joshua Miller. Mr. York was pronounced dead shortly after the accident occurred. At the time of the accident, Mr. York was insured under Policy No. 55 PHJ 175936 (the "policy" or the "Hartford policy"), issued by defendant Property and Casualty Insurance Company of Hartford ("Hartford"). The policy was issued to Chester and Robin York, Adam York's parents, and provided underinsured motorist coverage benefits to Adam York as an adult resident child of the Yorks. It is uncontested that Mr. York and his parents resided in Kentucky, and that the policy was issued in Kentucky under Kentucky law.

The parties dispute the interpretation of many of the facts in this case. It is undisputed that on November 1, 2011, the plaintiff filed a lawsuit in the Circuit Court of Mingo County, West Virginia, against Mr. Miller. By letter dated December 2, 2011, Mr. Miller's liability insurer, USAA, tendered his available bodily injury limits of $100,000 to compensate Adam York's estate, and that this tender was contingent upon a waiver of subrogation from Hartford. Thereafter, on January 23, 2012, the plaintiff forwarded USAA's letter to Hartford. The plaintiff alleges that this letter included a request for the applicable subrogation waivers and a demand for the payment of $100,000 in underinsured motorist coverage benefits under the Hartford policy. The plaintiff also alleges that Hartford did not properly respond to this letter. Hartford contends that the plaintiff failed to make a proper demand on Hartford under Kentucky law, and that it conducted a proper investigation of the claim.

On March 9, 2012, the plaintiff filed an amended complaint, naming Hartford as a defendant and attempting to recover the $100,000 in underinsured motorist coverage benefits provided by the policy. Hartford did not respond to the complaint, and the Circuit Court of Mingo County entered default judgment against Hartford in the amount of $4,127,615.18 on June 12, 2012. (*See* J. Order, Circuit Court of Mingo County [Docket14-1]). Thereafter, Hartford removed the case to this court. This court set aside the default judgment on October 3, 2013, and directed the plaintiff to file an amended complaint. The plaintiff filed her Third Amended Complaint [Docket 78] on November 1, 2013. The remaining claims in the Third Amended Complaint are that the plaintiff substantially prevailed against Hartford, common law bad faith, and statutory bad faith under the West Virginia Unfair Trade Practices Act, W. Va. Code §33-11-1, *et seq*. ("WVUTPA").

On November 15, 2013, Hartford tendered payment of $100,000 to plaintiff's counsel, which plaintiff's counsel accepted. The plaintiff contends this was the first time Hartford made a payment or attempted to make a payment of the policy. Hartford contends that it made tenders of the $100,000 policy amount in June, August, and September 2012. Hartford further argues that plaintiff's counsel intentionally ignored the tenders made by Hartford because it was focused on obtaining the $4.1 million default judgment entered in state court.

Both parties have filed motions for summary judgment. The plaintiff requests a finding that she substantially prevailed in recovering the underinsured motorist coverage from Hartford, entitling the plaintiff to the reasonable attorney's fees and damages. Hartford moves for summary judgment on each of the plaintiff's claims.

3

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III. Choice of Law

Before addressing the substantive arguments in the parties' motions for summary judgment, I must determine what law to apply to these disputes. In the Memorandum Opinion & Order issued on October 3, 2013, I found that Kentucky law applied in this case. (*See* Mem. Op. & Order [Docket 67], at 11, n.1 ("West Virginia's choice of law rules dictate that I apply Kentucky law here because the insurance policy was issued in Kentucky." (citing *Lee v. Saliga*, 373 S.E.2d 345, 348 (W. Va. 1988))). This was in the context of the underinsured motorist claim, which none of the parties dispute was governed by Kentucky law. The parties now dispute whether Kentucky law or West Virginia law applies to the remaining claims in this case. The parties also dispute whether tort choice of law rules or contracts choice of law rules govern the plaintiff's claims.

The automobile insurance policy in question was issued to Chester and Robin York in Kentucky. The Yorks were residents of Kentucky at the time the insurance policy was purchased, and the policy is called a "Kentucky auto insurance policy." (Def. Prop. & Cas. Ins. Co. of Hartford's Mem. in Supp. of its Mot. for Summ. J. ("Def.'s Mem. in Supp.") [Docket 84], at 4). The Yorks filled out a Kentucky auto insurance application and Kentucky underinsured motorist application to obtain the policy. (*Id.*). Adam York was covered by this policy as an adult resident son of the Yorks in their Kentucky home. (*Id.* at 1). None of these facts are contested by the plaintiff.

Under either contract or tort choice of law rules, Kentucky has the most significant relationship to the events in this case. The plaintiff's main argument against the application of Kentucky law is that Adam York's injury occurred at the place of the accident, in Mingo County, West Virginia. This overlooks the fact that this is not a wrongful death action against the person

5

responsible for Mr. York's death. Rather, this is a bad faith action against Hartford. The injury, if any, did not occur when Mr. York was killed—it occurred when the alleged torts were committed by Hartford.

In an unpublished case, *Yost v. Travelers Ins. Co.*, 181 F.3d 95, 1999 WL 409670 (4th Cir. 1999), the Fourth Circuit analyzed a similar factual situation. In *Yost*, the appellant was injured in a car accident near Morgantown, West Virginia. 1999 WL 409670, at *1. The appellant sued Travelers Insurance Company, the insurer of the car that had struck her, alleging bad faith and unfair practices under the WVUPTA. *Id.* The car that struck the appellant was owned by a Pennsylvania resident, titled and stored in Pennsylvania, and insured through a Pennsylvania auto insurance policy. *Id.* Using tort choice of law principles, the Fourth Circuit determined that Pennsylvania law applied in that case because it had the most significant relationship to the occurrence at issue. *Id.* at *5.

While the Supreme Court of Appeals of West Virginia has never expressly adopted the Restatement (Second) of Conflict of Laws for determining what law to apply in contracts cases, the court has often relied on it when resolving conflicts questions. *See Pen Coal Corp. v. William H. McGee & Co., Inc.*, 903 F. Supp. 980, 983-84 (S.D. W. Va. 1995) (collecting cases); *see also M & S Partners v. Scottsdale Ins. Co.*, 277 F. App'x 286, 289 (4th Cir. 2008) (internal citations omitted) ("West Virginia courts generally use *lex loci deliciti* to resolve choice of law conflicts, but for 'particularly thorny conflicts problems,' the West Virginia Supreme Court of Appeals has relied on the Restatement (Second) of Conflict of Laws (1971), Sections 6 and 145, to provide the framework for determining the applicable law. When reviewing complex contracts and 'parasitic'

6

torts—i.e., torts dependent upon an underlying breach of contract claim—West Virginia courts have resorted to using the Restatement.") (internal citations omitted).

"Section 145 of the Restatement sets forth four sorts of 'contacts' to be taken into account, while § 6 lists seven 'factors' relevant to the choice of law." *Yost*, 1999 WL 409670, at *3. The contacts in Section 145 include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Restatement (Second) of Conflict of Laws* § 145 (1971). An analysis of these contacts shows that Kentucky law applies in this case.

First, the place where the injury occurred was Kentucky, not West Virginia. The Yorks are residents of Kentucky, Mr. York was a resident of Kentucky, and the insurance policy at issue was a Kentucky policy, issued in Kentucky. When Hartford allegedly injured the Yorks, their actions were directed at Kentucky residents and Mr. York's Kentucky estate. Additionally, as in *Yost*, "the worry, annoyance, and economic hardship of the delay in receiving compensation would have been suffered" in the plaintiff's state of residency, not the state where the accident occurred. 1999 WL 409670, at *3.

Second, the place where the conduct causing the injury occurred was not Kentucky or West Virginia. The claims adjuster for Mr. York's claim, Sandy Green, was located in Indianapolis, Indiana, and frequently worked on Kentucky claims. (Green Aff. [Docket 7-2] at ¶¶ 4, 14). Ms. Green did not work on West Virginia claims. (*Id.* at ¶ 14). The plaintiff has produced no evidence that any of Hartford's allegedly tortious conduct originated in West Virginia.

7

Third is the domicil, residence, nationality, place of incorporation and place of business of the parties. Hartford is a foreign corporation and is headquartered in Connecticut. It does business nationwide. The Yorks are residents of Kentucky, and Mr. York was a resident of Kentucky prior to his death.

Fourth is the place where the relationship, if any, between the parties is centered. The relationship between the Yorks and Hartford is centered in Kentucky. The relationship exists because of a Kentucky insurance policy, issued to residents of Kentucky, in the state of Kentucky.

In addition to the Section 6 contacts, I also examine the Section 145 factors. The *Yost* court concluded that the Section 145 contacts and Section 6 factors both favored the application of Pennsylvania law. The relevant provisions of Section 6 noted by the court included the needs of the interstate system, basic policies of the area of law, and West Virginia's particular policy as compared to that of other interested states. *See Yost*, 1999 WL 409670, at *4. It noted that

> [t]he first factor—the needs of the interstate system (§ 6(2)(a))—is a reminder of the interstate nature of commerce and many other activities and of the need for harmonious relations between states. No state should be overly eager to apply its own law to a dispute in which some other state is more interested, even if the forum state is convinced of the superiority of its own law. The final two factors (§ 6(2)(f), (g)) simply give us goals—predictability and ease of application—that may well elude us given the fact-bound nature of the inquiry and the generality of the Restatement criteria.

*Id.* The court determined that the purpose of laws such as the WVUPTA is "to ensure fair play by insurance companies," and "the character of such laws is *protectionist*. In other words, West Virginia's law is designed as it is in order to protect the citizens of West Virginia." *Id.* (emphasis in original). Additionally, West Virginia and Pennsylvania had differing laws regarding whether third parties, such as the appellant, could bring actions against the insurer. *Id.* at 5. The court found

8

that this different balance struck by each state also weighed in favor of applying Pennsylvania law. As the court noted,

> This careful legislative balancing makes the last Restatement factor—"the protection of justified expectations" (§ 6(2)(d))—all the more important, and it weighs heavily in favor of Pennsylvania law. Travelers is involved in this case solely on account of a contract with a Pennsylvania resident insuring Pennsylvania property, and surely both parties to that contract would be justified in believing that Pennsylvania law would govern Travelers' conduct. On the other hand, there is no evidence or suggestion that Mrs. Yost drove into West Virginia with the expectation that she could sue a third-party insurer should some calamity befall her.

*Id.* at *5.

I agree with the reasoning of the *Yost* court. This is a case relating to a Kentucky insurance policy, held by residents of Kentucky. The only relevant conduct in West Virginia was a car accident that happened to occur here. As in *Yost*, "[h]ere too we have an alleged tort, and here too the tort could not exist absent a contract governed by another state's law. Finally, in this case the connection with West Virginia was not only inconsequential, but also literally accidental. The applicability of West Virginia law does not turn on such a 'fortuity.'" *Id.* (quoting *Lee v. Saliga*, 373 S.E.2d 345, 352 (W. Va. 1988)).

This result is consistent with West Virginia jurisprudence. While the remaining claims are sounding in tort, none of them would exist absent the underlying contractual relationship between the Yorks and Hartford, which is undisputedly governed by Kentucky law. It would be illogical to apply the law of Kentucky to the contractual relationship of the parties but West Virginia law to tort claims arising out of that contractual relationship. As the Supreme Court of Appeals of West Virginia has noted,

> [t]he usual coincidence of the insurance agent, insured, and the risk in the same state dictates that the parties would be more familiar with that state's insurance statutes, which often supplement or control the policy provisions. This law should

9

control the reasonable expectation of the parties, rather than that of another state whose only connection to the dispute is the fortuity that the accident occurred there.

373 S.E.2d at 352.

Based upon the foregoing, I **FIND** that Kentucky law applies to the plaintiffs' claims.

### IV.   Motions for Summary Judgment

The plaintiff's claims are all based upon the allegations in the Third Amended Complaint [Docket 78]. The Third Amended Complaint only alleges causes of action premised on West Virginia law. However, the parties discussed the application of both West Virginia and Kentucky law in the summary judgment briefing, and neither party asked for additional briefing on choice of law issues. Therefore, I will construe the complaint as making allegations under Kentucky law. The remaining claims in this case are that the plaintiff substantially prevailed against Hartford, and statutory and common law bad faith.

#### A.  Whether the Plaintiff Substantially Prevailed Against Hartford

The plaintiff argues that she is entitled to summary judgment on the issue of whether she substantially prevailed in obtaining first-party insurance policy benefits under the WVUPTA. However, I have determined that West Virginia law is not applicable in this case. There does not appear to be an analogous cause of action under Kentucky law, and the plaintiff does not argue that an analogous cause of action exists. Therefore, Plaintiff's Motion for Partial Summary Judgment on the Issue of Substantially Prevailing [Docket 81] is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED** with regard to this issue.

#### B.  Statutory and Common Law Bad Faith

Hartford moves for summary judgment on each of the plaintiff's claims. Hartford argues that the plaintiff failed to perfect her underinsured motorist claim under Kentucky law, and that

10

even if the plaintiff had perfected her claim, mere delay does not give rise to a claim of bad faith under Kentucky law. The plaintiff argues that she has sufficiently demonstrated that Hartford acted in bad faith under Kentucky's heightened standard.

Like West Virginia, Kentucky provides for both statutory and common law bad faith claims. *See United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003) ("Actions for bad faith insurance claims settlements in Kentucky may arise either under common law or by way of the Unfair Claims Settlement Practices Act, KRS7 304.12–230."); *see also* Ky. Rev. Stat. Ann. § 304.12-230; Ky. Rev. Stat. Ann. § 446.070; *Motorists Mut. Ins. Co. v. Glas*s, 996 S.W.2d 437, 451 (Ky. 1997). However, unlike West Virginia, Kentucky has a heightened pleading standard for bad faith claims.

> An insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. An insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

> The evidentiary threshold is high indeed. Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insured's rights. Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown.

*Bult*, 183 S.W.3d at 186.

11

Hartford argues that the plaintiff cannot demonstrate a reasonable dispute of material fact for any of these elements. I will begin by discussing the third element: knowledge and/or reckless disregard. This element places a significant burden on the plaintiffs. "Mere negligent failure to settle within the policy limits or errors of judgment are insufficient to constitute bad faith," and "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Glass*, 996 S.W.2d at 451, 452. The plaintiff must provide "proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage." *Id.* at 452-53.

The plaintiff argues that she has presented sufficient facts to withstand summary judgment. Specifically, she argues that despite knowing the plaintiff would prevail, Hartford "attempted to avoid liability through technicalities, misrepresentations, and diversion of attention" before eventually paying the limits of the policy. (Pl.'s Mem. in Opp. [Docket 87], at 19-20). The parties disagree regarding whether Hartford made a tender of the policy before November of 2013. However, whether Hartford made or did not make tenders of the policy prior to the settlement date is a moot point. All of the evidence presented by the plaintiff relates to Hartford's alleged delay in tendering the policy. (*See* Pl.'s Mem. in Opp. [Docket 87], at 2-6)). The plaintiff does not present any evidence that Hartford "engaged in outrageous conduct toward its insured," or that Hartford's "conduct [was] driven by evil motives or by an indifference to its insured's rights." *Bult*, 183 S.W.3d at 186. "Bad faith must be more than bad judgment or negligence—it involves 'moral obliquity,' 'a breach of a known duty through some motive of interest or ill will' or 'actual intent to mislead or deceive another.'" *Budde v. State Farm Mut. Auto. Ins. Co.*, No. 5:09-CV-00053-TBR,

12

2011 U.S. Dist. LEXIS 48022, 6-7 (W.D. Ky. May 4, 2011) (quoting *Carruba v. Transit Cas. Co.*, 443 F.2d 260, 261 (6th Cir. 1971)). I therefore **FIND** that the plaintiff has not demonstrated a reasonable dispute of material fact that Hartford acted in bad faith under Kentucky law. For this reason, Defendant's Motion for Summary Judgment is **GRANTED** with regard to this issue.

### V. Conclusion

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment on the Issue of Substantially Prevailing [Docket 81] is **DENIED**, Defendant Property and Casualty Insurance Company of Hartford's Motion for Summary Judgment [Docket 83] is **GRANTED**, and the balance of the pending motions in this case are **DENIED as moot**. The court **ORDERS** that judgment be entered in favor of the defendants and that this case be dismissed and stricken from the docket of this court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 4, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE